UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD ROERSMA,

    Plaintiff,                                             Hon. Janet T. Neff

v.                                                    Case No. 1:08-CV-1069

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 38 years of age at the time of the ALJ's decision. (Tr. 23, 58). He completed the ninth grade and worked previously as a taxicab driver, taxicab dispatcher, and truck driver. (Tr. 75, 80, 82-85).

Plaintiff applied for benefits on May 4, 2005, alleging that he had been disabled since December 1, 2003, due to COPD, head injury, seizures, blackouts, sleep apnea, and asthma. (Tr. 58-60, 74). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-58). On March 6, 2008, Plaintiff appeared before ALJ Patrick Toal, with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 362-422). In a written decision dated May 28, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 13-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

On September 12, 2001, Plaintiff participated in an upper endoscopy examination, the results of which revealed he was experiencing gastroesophageal reflux disease (GERD). (Tr. 168). On September 24, 2001, Plaintiff participated in an esophageal manometry examination,[1] the results of which were "normal." (Tr. 173-74).

On October 15, 2001, Dr. Lonson Barr performed a Nissen fundoplication procedure[2] on Plaintiff. (Tr. 197-98). Following this procedure, Plaintiff began experiencing "some respiratory difficulties." (Tr. 191-92). X-rays of Plaintiff's chest revealed "hypoaeration, poor inspiratory effort, diffuse atelectasis, and questionable edema." (Tr. 193). Plaintiff responded to treatment and was "discharged in stable condition" on October 22, 2001. (Tr. 191-92).

On March 22, 2002, Plaintiff participated in a polysomnography examination, the results of which revealed "mild" obstructive sleep hypopnea and "mild" sleep fragmentation. (Tr. 250-51).

On February 25, 2005, Plaintiff was examined by Dr. Robert Heacox. (Tr. 254-55). Plaintiff reported that "over the past 2 weeks he has been coughing more" and that as a result he once or twice daily experiences brief episodes of syncope. (Tr. 254). X-rays of Plaintiff's chest were "normal," with no evidence of pneumothorax or pleural effusion. (Tr. 259). A CT scan of

---

[1] An esophageal manometry examination is a procedure for determining how well the muscle of the esophagus works by measuring pressures (manometry) generated by the esophageal muscles. *See* Esophageal Manometry, available at http://www.medicinenet.com/esophageal_manometry/article.htm (last visited on June 28, 2010). Esophageal Manometry is used primarily in three circumstances: (1) to evaluate the esophagus when there is reflux of stomach acid into the esophagus; (2) to determine the cause of problems with swallowing food (dysphagia); and (3) when there is chest pain that be originating from the esophagus. *Id.*

[2] Nissen fundoplication is a procedure designed to strengthen the valve between the esophagus and stomach, which prevents acid from backing up into the esophagus. *See* Fundoplication Surgery for Gastroesophageal reflux disease (GERD), available at http://www.webmd.com/heartburn-gerd/fundoplication-surgery-for-gastroesophageal-reflux-disease-gerd (last visited on July 2, 2010).

Plaintiff's head revealed an "abnormal area of enhancement" that "probably represents an old injury." (Tr. 254-55, 257). On March 9, 2005, Plaintiff participated in an MRI examination of his brain, the results of which were "consistent with posttraumatic change" resulting from an injury Plaintiff suffered in a motorcycle accident 14 years previously. (Tr. 277).

On March 25, 2005, Plaintiff was examined by Dr. William Katz. (Tr. 288-92). Plaintiff reported that "for the past 1-2 months he has experienced paroxysms of cough which have been associated with syncopal episodes." (Tr. 288). Plaintiff reported that he has experienced this previously, although "it had only occurred once or twice a year prior to the accelerated occurrence of the past 1-2 months." (Tr. 288). The doctor observed that "for the past 17 years, [Plaintiff] has smoked 2-3 packs of cigarettes each day." (Tr. 288).

Auscultation of Plaintiff's lungs revealed "breath sounds to be diminished in a diffuse fashion," without evidence of adventitious sounds or use of accessory muscles. (Tr. 290). A cardiac examination "revealed a regular rhythm to be present with no murmur or gallop appreciated." (Tr. 290). An examination of Plaintiff's lower extremities revealed no evidence of edema. (Tr. 290). The results of a pulmonary function test revealed a "mild" restrictive pulmonary defect, but were otherwise unremarkable. (Tr. 285).

Plaintiff was diagnosed with tussive syncope.[3] (Tr. 291). The doctor informed Plaintiff that "there is no pharmacologic intervention" for this condition and that the treatment was to instead remove the stimulus that was inciting his cough. (Tr. 291). In this respect, Dr. Katz instructed Plaintiff that "he simply has to stop his cigarette habit." (Tr. 291). The doctor informed

---

[3] Tussive syncope refers to a brief loss of consciousness associated with paroxysms of coughing. *See* Syncope, available at http://medical-dictionary.thefreedictionary.com/tussive+syncope (last visited on July 16, 2010).

Plaintiff that "upwards of 90% of individuals who quit their tobacco habit will experience significant improvement or total ablation of cough after one year of smoking cessation." (Tr. 291-92). Plaintiff was also instructed to "lose weight and begin some type of reconditioning program." (Tr. 292).

On May 2, 2005, Plaintiff was examined by Dr. Timothy Thoits. (Tr. 263-64). Plaintiff reported experiencing blackouts "which began 10 years ago shortly after a motor vehicle accident." (Tr. 263). Plaintiff reported that he used to experience blackouts only once or twice yearly, but that he had recently begun experiencing them more frequently. (Tr. 263). Plaintiff reported that "the blackouts occur in the setting of real heavy, deep coughing" and "if he does not cough he does not blackout." (Tr. 263). Romberg testing was negative and the results of a physical examination were unremarkable. (Tr. 263-64). Dr. Thoits concluded that it was "difficult" to "sort out whether [Plaintiff] is having tussive syncope or true seizures." (Tr. 264). The doctor recommended that Plaintiff undergo an EEG examination. (Tr. 264). On May 4, 2005, Plaintiff participated in an EEG examination, the results of which were "normal," with no evidence of epileptiform discharges. (Tr. 265).

On May 31, 2005, Plaintiff was examined by Dr. Katz. (Tr. 281-82). Plaintiff reported that he "had curtailed his tobacco habit to only a few cigarettes daily" and "hasn't experienced any syncopal episodes for the past month." (Tr. 282).

On July 8, 2005, Plaintiff participated in an upper gastrointestinal examination, the results of which "suggest[ed]" that his Nissen fundoplication is "no longer functional." (Tr. 269). X-rays of Plaintiff's chest, taken the same day, revealed "mild" interstitial marking and "mild" peribronchial cuffing that "suggest there may be an inflammatory process occurring within the lung parenchyma." (Tr. 271).

6

On September 1, 2005, Plaintiff was examined by Dr. Katz. (Tr. 279). Plaintiff reported that he was continuing to experience "cough syncope." (Tr. 279). Plaintiff reported that he was "doing fairly well until one month ago when he suffered three syncopal episodes in one week." (Tr. 279). Plaintiff reported that he continued to smoke "about ½ pack of cigarettes daily." (Tr. 279). The doctor informed Plaintiff that "until he can quit this habit, it's really difficult to attribute his coughing to anything else." (Tr. 279).

On September 8, 2005, Plaintiff was examined by Dr. Srinivas Janardan. (Tr. 293-94). The doctor diagnosed Plaintiff with GERD with regurgitation. (Tr. 293). The doctor reported that Plaintiff's heartburn was "under good control" with medication, but that "his regurgitation symptoms are not." (Tr. 293). Dr. Janardan advised against a second fundoplication procedure and instead recommended that Plaintiff lose weight. (Tr. 293).

On October 4, 2005, Plaintiff participated in a consultive examination conducted by Laura Brandt, M.A. and Peter Birkeland, Ph.D. (Tr. 304-09). Plaintiff reported that he spends time working on his computer. (Tr. 306). He reported that he "attempts to help out around the house but cannot do so for more than five minutes." (Tr. 306). Plaintiff also reported that he "becomes winded from showering and often needs to rest before he feels he has the strength to get out of the shower." (Tr. 306). The results of a mental status examination were unremarkable. (Tr. 307-08). Plaintiff was diagnosed with adjustment disorder with depressed mood. (Tr. 309). His GAF score was rated as 55. (Tr. 309).

On October 31, 2005, Dr. Zahra Yousuf completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 311-24). Determining that Plaintiff suffered from adjustment disorder with depressed mood, the doctor concluded that Plaintiff satisfied the Part A

7

criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 312-20). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 321). Specifically, the doctor concluded that Plaintiff experienced no restrictions in the activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 321).

On December 12, 2006, physician's assistant Gary Detweiler completed a report regarding Plaintiff's ability to perform work-related activities. (Tr. 330-33, 341). Mr. Detweiler reported that Plaintiff can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. (Tr. 330). It was further reported that during an 8-hour workday Plaintiff can sit for 6-8 hours, stand for 2-4 hours, and walk for 1-2 hours. (Tr. 330). Mr. Detweiler also reported that Plaintiff required a sit-stand option and can only occasionally stoop, reach above shoulder level, squat, kneel, climb ramps/stairs, crouch, or crawl. (Tr. 330-31). Dr. John Schneider subsequently reported that he concurred with Mr. Detweiler's opinion. (Tr. 341).

On November 21, 2007, Dr. Katz reported that Plaintiff had been able to "decrease his tobacco use" and was "stable. . .from a respiratory standpoint." (Tr. 338).

On February 28, 2008, Dr. Thoits authored a letter in which he states that following a September 2007 examination, he concluded that Plaintiff's "coughing is the onset of a seizure and not the cause of the blackout." (Tr. 350). Dr. Thoits further reported that Plaintiff "is now being treated for epilepsy" and "is doing well." (Tr. 350). Specifically, the doctor reported that "since starting on medications, [Plaintiff] has not had seizures" and "is now well controlled on a single

8

antiepileptic drug." (Tr. 350). Dr. Thoits further reported that Plaintiff "has not had side effects from his medications." (Tr. 350).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from (1) seizure disorder, (2) COPD, (3) asthma, (4) obstructive sleep apnea, (5) obesity, and (6) a history of head injury, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-19). The ALJ concluded that despite the limitations imposed by these impairments, Plaintiff was able to perform his past relevant work as a taxicab dispatcher. (Tr. 22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can only occasionally lift/carry 20 pounds; (2) he can frequently lift/carry 10 pounds; (3) he can only occasionally climb, balance, stoop, kneel, crouch, or crawl; (4) he must avoid even moderate exposure to hazards; (5) he must avoid concentrated exposure to fumes, dusts, gases, and pulmonary irritants; and (6) he requires a sit/stand option. (Tr. 19). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. A vocational expert testified that a person with Plaintiff's RFC could perform

Plaintiff's past relevant work as a taxicab dispatcher. (Tr. 420-21). Relying on this evidence, the ALJ concluded that Plaintiff was not disabled.

        a.        The ALJ Properly Assessed the Medical Evidence

Plaintiff asserts several arguments regarding the ALJ's assessment of the medical evidence, each of which is addressed below.

First, Plaintiff asserts that the ALJ disregarded "pertinent disabling evidence" from Dr. Thoits. The Court discerns nothing in Dr. Thoits' treatment notes or reports that contradicts the ALJ's decision. As previously noted, Dr. Thoits diagnosed Plaintiff as suffering from seizures which are now "well controlled" with medication from which Plaintiff suffers no side effects. The doctor reported that since beginning this medication, Plaintiff has not experienced any seizures. Moreover, Dr. Thoits has not imposed on Plaintiff any limitations or restrictions which are inconsistent with the ALJ's RFC determination.

Plaintiff asserts that the ALJ "ignored" Dr. Katz's findings. In support of this argument, Plaintiff observes that Dr. Katz treated him for "multiple respiratory related problems." While accurate, this particular observation is irrelevant as simply receiving treatment for a condition does not lead inexorably to the conclusion that the condition is disabling in nature. Rather, the question is the extent to which Plaintiff's ability to perform work-related activities is limited by his impairments. In this respect, the Court notes that Dr. Katz never imposed on Plaintiff any limitations that are inconsistent with the ALJ's RFC determination.

Plaintiff asserts that the ALJ "ignored" the findings of Dr. Goodstein. In support of this argument, Plaintiff relies on a misinterpretation of the record. On March 14, 2002, Plaintiff

11

participated in a consultive examination conducted by Dr. Richard Goodstein, who concluded that Plaintiff suffered chronic hypercapnic respiratory insufficiency. (Tr. 224-25). The doctor nevertheless instructed Plaintiff that because his "job is somewhat sedentary" he could "return to work." (Tr. 225). Plaintiff has misconstrued Dr. Goodstein's statement as articulating the limitation that Plaintiff is restricted to sedentary work. There is a clear distinction between a doctor informing a patient that he can return to a job of a certain character and informing a patient that he can only perform jobs of a certain character. Dr. Goodstein simply informed Plaintiff that he could return to the sedentary work he was then performing. The doctor did not, however, limit Plaintiff to the performance of only sedentary work. Moreover, any such limitation is contradicted by substantial medical evidence as articulated by the ALJ.

Plaintiff asserts that the ALJ "ignored" Dr. Schneider's findings. As noted above, Dr. Schneider adopted the report completed by physician's assistant Gary Detweiler regarding Plaintiff's functional limitations. The ALJ did not ignore Dr. Schneider's opinions, but instead afforded them "controlling weight." Dr. Schneider's opinion in this regard is consistent with the medical evidence. It is also consistent with the ALJ's RFC determination. The Court further notes that none of Plaintiff's care providers have imposed on Plaintiff limitations that are inconsistent with Dr. Schneider's opinion or the ALJ's RFC determination.

Plaintiff asserts that the ALJ "ignored the compelling evidence" from Laura Brandt, M.A. and Dr. Birkeland. As noted above, on October 4, 2005, Plaintiff participated in a consultive examination conducted by Brandt and Birkeland. The examiners diagnosed Plaintiff with adjustment disorder with depressed mood and rated his GAF score as 55. Such hardly constitutes

"compelling evidence" that Plaintiff is disabled. The results of this examination are entirely consistent with the ALJ's RFC determination.

      b.      The ALJ Properly Assessed Plaintiff's Credibility

In assessing Plaintiff's credibility, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible or consistent with objective findings and opinions." (Tr. 21). Plaintiff asserts that the ALJ failed to give proper weight to his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ examined the record in great detail and engaged in a lengthy discussion as to why he found Plaintiff less than credible. As the ALJ correctly determined, the objective medical evidence does not support Plaintiff's subjective allegations of disabling pain and limitation. While Plaintiff asserted at the administrative hearing that he must continually (i.e., 24 hours a day, 7 days a week) use oxygen, as the ALJ correctly observed the medical record fails to support such. As the ALJ further observed, none of Plaintiff's care providers have ever imposed on Plaintiff limitations

14

which are inconsistent with his RFC. In fact, as noted above, Plaintiff's care providers consistently recommended that Plaintiff increase his activity level. In sum, there exists substantial evidence to support the ALJ's credibility determination.

        c.        Plaintiff does not Satisfy Listings 3.02 or 3.10

The ALJ determined that Plaintiff's impairments, whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments. In support of his claim for Social Security benefits, Plaintiff submitted to the ALJ a form indicating that he was found disabled by the State of Michigan in December 2005. (Tr. 124). The only rationale articulated for this determination is the notation, "3.02, 3.10." (Tr. 124). Plaintiff asserts that this evidence establishes that he satisfies sections 3.02 and 3.10 of the Listing of Impairments.

Section 3.02 of the Listing of Impairments concerns chronic pulmonary insufficiency. 20 C.F.R., Part 404, Subpart P, Appendix 1 § 3.02. Disability under this Listing is established by objective test results below certain levels, as articulated in the Listing. Plaintiff does not assert that he satisfies any of the requirements of this Listing. Moreover, as the ALJ correctly observed, the results of pulmonary function testing revealed that Plaintiff performed at a level well beyond that required to satisfy this particular Listing. (Tr. 18, 286). Section 3.10 of the Listing concerns sleep-related breathing disorders. 20 C.F.R., Part 404, Subpart P, Appendix 1 § 3.10. Disability under this Listing is likewise established by objective test results below certain levels, as articulated in the Listing. Plaintiff does not assert that he satisfies the requirements of this Listing and the Court discerns nothing in the medical record establishing such.

Plaintiff's claim that he satisfies these Listings is based entirely on the allegation that the State of Michigan determined that he satisfied such. The ALJ specifically addressed this argument, however, concluding:

> the Social Security Administration and Administrative Law Judge are not bound by decisions made by other governmental or non-governmental agencies. These entities adjudicate the issue under their own rules for disability. Notwithstanding, forms, such as that submitted by counsel (Family Independence Agency) fails to delineate the actual medical evidence used to make the determination under their standards. As such, the state determination of disability is not of probative value.

(Tr. 18).

Plaintiff bears the burden of establishing that he satisfies a Listed impairment. *See, e.g., Bingaman v. Commissioner of Social Security*, 186 Fed. Appx. 642, 645 (6th Cir., June 29, 2006). The only "evidence" Plaintiff has identified in support of his argument is the apparent determination by the State of Michigan that he is disabled. As the ALJ correctly observed, however, the record fails to identify the evidence on which this determination was based or whether the standard applied is consistent with that identified above. In contrast, the medical record before the ALJ simply does not support the argument that Plaintiff satisfies either of the Listings in question. The ALJ, who is tasked with weighing the evidence before him, resolved this apparent conflict by relying on the medical record instead of vague conclusions by a different governmental entity. Accordingly, the ALJ concluded that Plaintiff failed to carry his burden to demonstrate that he satisfies a Listed Impairment. This conclusion is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 21, 2010      /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

17